[Civ. No. 19029.   Second Dist., Div. One.   Aug. 5, 1952.]

MARGO MORAN, Respondent, v. ELMER P. BROMLEY, as Executor, etc., Appellant.

A. G. Ritter and H. E. Lindersmith for Appellant.

Guy E. Ward for Respondent.

WHITE, P. J.—Upon this appeal from a judgment for plaintiff in a suit upon a claim against the estate of Leland M. Woods, deceased, the sole question presented is the sufficiency of the evidence to support the findings of the trial court before whom the cause was heard without a jury.

The substance of plaintiff's complaint was that plaintiff advanced sums of money to the deceased to enable him to purchase a residence in Palm Springs and that deceased agreed to reimburse plaintiff for the money so advanced. In another cause of action claim was made for $500 as the purchase price of furniture sold by plaintiff to the deceased. A copy of the creditor's claim filed in the matter of the estate of said deceased was annexed to the complaint. The court found all the allegations of plaintiff's complaint to be true and directed judgment to be entered accordingly.

Appellant urges that the court erred in finding that the decedent became indebted to plaintiff in the sum of $9,536.15 for moneys loaned to decedent (in connection with the purchase of the Palm Springs property); that the court erred in failing to allow a credit of $1,000 for certain San Bernardino property received by plaintiff when the Palm Springs property was sold; and that the court erred in finding that the estate was indebted in the sum of $500 for furniture sold by plaintiff to decedent in his lifetime.

When the findings of a court or the verdict of a jury are attacked as unsupported by the evidence, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusions of the trier of fact, and when contrary inferences might reasonably be deduced from the evidence presented the reviewing court it without power to substitute its deductions for those of the trier of fact. (*Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427, 429 [45 P.2d 183].) This rule is equally applicable in re-

viewing findings of a judge as it is when considering the verdict of a jury. (*Pfingst* v. *Goetting*, 96 Cal.App.2d 293, 296, 312 [215 P.2d 93].) Appellant's counsel argue most ably and earnestly in an effort to persuade this court that the evidence presented by plaintiff lacks that substantiality required to support the findings of the trial court in her favor. They succeed, however, only in pointing out discrepancies and inconsistencies which might conceivably have warranted the drawing of inferences contrary to those drawn by the trier of fact. Assuming that different conclusions might reasonably be drawn from the evidence by different minds, the trial court's findings of fact are conclusive (*Vosburgh* v. *Meda*, 61 Cal.App.2d 396 [143 P.2d 41].) It is beyond the function of the appellate court to evaluate evidence or determine the credibility of witnesses (*Seidenberg* v. *George*, 76 Cal.App.2d 306 [172 P.2d 891]).

James Bryson Amos, a loan officer of the Bank of America, testified that plaintiff and decedent came to the Palm Springs office of the bank and plaintiff applied for a personal loan of $6,000; that decedent stated that the loan was to be used in connection with the purchase of a home by decedent in Palm Springs; that because Mr. Woods, the decedent, was under a restraining order in a domestic relations proceeding he could not execute the note, and that Miss Tyler (plaintiff and respondent) would execute the note; that the loan was to be repaid from the Samaritan Institute owned by decedent; that decedent would repay the funds as soon as the litigation with his wife was settled; that he would then repay from his own funds or the funds of the Samaritan Institute. Irene C. Comstock, an escrow officer of the Bank of America, Palm Springs Branch, identified the escrow instructions for the purchase of the property and testified that decedent said that the property was being taken in Miss Tyler's name but would later be changed to the correct vestee, and that at a later date when the Samaritan Institute was to take title all the money that had been put in was to be returned to her (plaintiff). Testimony more or less corroborative of the foregoing testimony that the plaintiff was to be repaid her advancements was given by three real estate brokers and by the husband and wife, who were the sellers of the Palm Springs property.

In addition, one Belmont San Chez, a close friend of decedent, testified that decedent attempted to sell him the property but declined to accept the witness' offer because

he could not accept such a price inasmuch as plaintiff had advanced the original money and would have to be repaid; that decedent frequently stated that plaintiff had advanced the money and that decedent would have to repay her; that decedent attemped to borrow money from the witness for the purpose of repaying plaintiff; that the witness aided decedent in securing a loan upon decedent's promise to use the money to repay his obligation to plaintiff, but that decedent failed to do so.

With respect to the principal issue, that is, whether the plaintiff in advancing various sums in connection with the purchase of the Palm Springs property was merely lending money to the decedent and had no real interest in the property herself, appellant submits that the surrounding circumstances and the conduct of the parties strongly indicate that plaintiff was engaged in some real property investment of her own and that the "gratuitous statements of the deceased as to his intentions in the matter should be considered wholly insufficient in establishing an agreement on his part with the plaintiff." Further it is pointed out that the declarations against interest of the deceased must be viewed with caution, and that subsequent conduct of the parties after the deceased was no longer under a restraining order in a divorce proceeding can be logically explained only upon the theory that deceased was assisting plaintiff in purchasing the property by advancing and loaning sums to her to enable her to maintain the payments on the first and second trust deeds. The argument is futile. The trial court drew its inferences upon the testimony of numerous witnesses as to the declarations of the decedent and rejected whatever possible contrary inferences might logically be drawn from the manner in which the transaction was handled. The evidence presented by plaintiff as to the declarations of decedent was sufficient to support the findings (*Roy* v. *Salisbury,* 21 Cal.2d 176 [130 P.2d 706]; *Wright* v. *Best,* 19 Cal.2d 368 [121 P.2d 702]). The strength or weakness of the testimony, the credibility of the witnesses, and all questions of the value and effect of evidence, as well as the inferences to be drawn therefrom, were for the trier of fact to determine, and this court may not, regardless of what it might have done if sitting as a trial court, disturb the findings of that tribunal, founded as they are upon substantial evidence.

The creditor's claim filed by respondent contained the allegation that "on or about December 17, 1949, the time said

real property was sold, this claimant and the said Leland M. Woods, deceased, agreed that certain real property located in San Bernardino County, which was received as part of the purchase price on the sale of said property, would be taken in the name of this claimant in an amount of One Thousand Dollars ($1,000.00), and the said Leland M. Woods agreed that he would reimburse this claimant for all sums of money that she had invested in said property and which remained unpaid, after this credit.'' Appellant contends that it is apparent that the trial court failed to consider this item and allow a $1,000 credit in arriving at the amount of the judgment in the sum of $9,536.15. He presents in support of this contention a summary of the amounts advanced by plaintiff and payments made by the decedent, as shown by the canceled checks introduced in evidence. The creditor's claim contains the statement that decedent ''paid to this claimant the sum of Twelve Hundred Eighty Dollars ($1,280.00), which is credited to the total sum advanced by this claimant of Ten Thousand Eight Hundred Sixteen and 15/100 Dollars ($10,816.15),'' and concludes with a demand for the sum of $9,536.15 as the balance due the claimant. A series of checks written by decedent were introduced by plaintiff in the total sum of $1,110.25. It is argued that from these checks it appears clear that the $1,000 credit was not taken into consideration in the admission by plaintiff that she had received a total of $1,280 in payment upon the decedent's obligation.

However, while acknowledging that the estate was entitled to a credit of $1,000 for the San Bernardino property, the creditor's claim contains the statement that the sum of $9,536.15 is justly due, and ''that no payments have been made thereon which are not credited and that there are no offsets to the same to the knowledge of the claimant.'' Some, but not all, of the checks before the trial court contained notations that they were payments with reference to the Palm Springs property. The defense introduced no evidence that all of such checks were in payment of money due the claimant for her advances on the Palm Springs property. The record as presented to this court contains no reference to the issue of whether the credit for the San Bernardino property had been allowed or not, either at the trial, during argument, or upon motion for a new trial.

■■ The burden of proof of payment is upon the party asserting such payment (*Roesch* v. *De Mota*, 24 Cal.2d 563

[150 P.2d 422] ; *Lloyd* v. *Kleefisch,* 48 Cal.App.2d 408 [120 P.2d 97] ; *Frank* v. *Repp & Mott,* 70 Cal.App.2d 407 [161 P.2d 279] ) ; and where, as here, the evidence is susceptible of conflicting interpretations, the inferences drawn by the trial court may not be disturbed on appeal (*Golden Gate Motor Transport Co.* v. *Klatt,* 134 Cal.App. 510 [25 P.2d 483] ; *Taylor* v. *Humbird,* 85 Cal.App.2d 40 [191 P.2d 78] ; *Bancroft-Whitney Co.* v. *McHugh,* 166 Cal. 140 [134 P. 1157] ; *Whitham* v. *Whitham,* 127 Cal.App. 481 [15 P.2d 1105] ). Further, as heretofore noted, the record presented for review fails to disclose that the issue under discussion was raised in the court below. ■ It is settled that an issue raised for the first time on appeal will not be considered (*Hayward Lbr. & Inv. Co.* v. *Ford,* 64 Cal.App.2d 346, 353 [148 P.2d 689] ; *MacKenzie* v. *Angle,* 82 Cal.App.2d 254, 263 [186 P.2d 30] ; *Campbell* v. *Birch,* 19 Cal.2d 778 [122 P.2d 902] ). For each of the reasons stated, appellant's contentions in this regard may not be sustained.

■ With respect to appellant's final contention, that the court erred in finding the estate indebted in the sum of $500 for furniture sold to decedent, while the record contains testimony by an accountant formerly in the employ of decedent to the effect that a certain check for $330 marked ''equipment account'' was issued in payment of furniture sold by the claimant to decedent, this witness was unable to state whether the check was payment in full or what the purchase price of the furniture was. Under the familiar rules hereinbefore cited, the determination of this matter was for the trier of fact.

For the reasons stated, the judgment is affirmed.

Doran, J., and Drapeau, J., concurred.